**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MILDRED E. TISDALE,

                Plaintiff,

                                          Case No. 3:09-cv-132-J-JRK

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Mildred E. Tisdale ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Her alleged inability to work is due to severe pain in her back, arms, and legs. See Transcript of Administrative Proceedings (Doc. No. 19; "Tr.") at 594. On March 19, 2004, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of September 1, 2003. Tr. at 112-14, 412-14. Plaintiff's claims were denied initially, Tr. at 32-33, 415-16, and upon reconsideration, Tr. at 39-40, 418-20. On February 24, 2005, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). Tr. at 41.

On April 17, 2006, an ALJ conducted a hearing, Tr. at 444, at which Plaintiff amended her alleged onset date to January 7, 2005, Tr. at 18, 23. The ALJ issued an unfavorable Decision on October 18, 2006. Tr. at 18-26. The Appeals Council denied Plaintiff's request for review, Tr. at 7-9, and Plaintiff filed the Complaint (Doc. No. 1) in this Court on February

---

[1]       The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 12), filed March 24, 2009; Order of Reference (Doc. No. 13), entered March 26, 2009.

13, 2009. On April 9, 2009, the Commissioner filed a Motion to Remand (Doc. No. 15), because the recording of the hearing was inaudible. Tr. at 461-64. The Court entered an Order (Doc. No. 16) on April 10, 2009, remanding the case for further administrative proceedings pursuant to sentence six of 42 U.S.C. §§ 405(g) and 1383(c)(3) and closed the file. Tr. at 465-66.

On October 2, 2009, the ALJ conducted a second hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 588-603. During the hearing, Plaintiff, through counsel, further amended her alleged onset date to April 4, 2004. Tr. at 602-03. The ALJ issued a Decision on November 25, 2009, finding Plaintiff disabled beginning April 9, 2008 through the date of the Decision. Tr. at 450-60. The ALJ's Decision dated November 25, 2009 is the final decision of the Commissioner. The Commissioner filed a Motion to Re-Open (Doc. No. 17) in this Court on June 3, 2010, which the Court granted on June 7, 2010, see Order (Doc. No. 20). Following a review of the parties' memoranda, this Court held oral argument on September 20, 2011. Minute Entry (Doc. No. 28), filed September 20, 2010.

Plaintiff alleges the ALJ's Decision is not supported by substantial evidence because the ALJ erred in two ways. See Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits Prior to April 9, 2008 (Doc. No. 24; "Pl.'s Mem."), filed August 6, 2010, at 6-11. The first allegation of error regards the ALJ's residual functional capacity ("RFC") assessment of Plaintiff and the resulting disability onset date. Id. at 6. Plaintiff contends the proper disability onset date is either the date of Wilda Murphy, M.D.'s examination of Plaintiff or the date of Robert A. Greenberg, M.D.'s examination of Plaintiff because both of those physicians determined

-2-

Plaintiff was limited to sedentary work.[2] Id. at 6, 10. According to Plaintiff, if she was limited to sedentary work on either of those dates, then applying the Medical-Vocational Guidelines, she would have been considered disabled. Id. at 6-11. The second allegation of error deals with the limiting effects, if any, of Plaintiff's obesity and whether the ALJ properly considered such effects. Id. at 10. For the reasons discussed herein, the Commissioner's final decision is due to be reversed and remanded for further proceedings consistent with this opinion and order.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. Tr. at 450-60. At step one, the ALJ observed Plaintiff "has not engaged in substantial gainful activity since the amended

---

[2] According to the Regulations, "[j]obs are sedentary if walking and standing are required occasionally . . . ." 20 C.F.R. § 404.1567. "Occasionally means occurring from very little up to one-third of the time, and that periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday . . . ." Smith v. Soc. Sec. Admin., 272 F. App'x 789, 798 (11th Cir. 2008) (internal quotations and citations omitted).

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

alleged onset date." Tr. at 452.  At step two, the ALJ determined Plaintiff "has had the following severe impairments: chronic obstructive pulmonary disease, asthma, sleep apnea, diabetes mellitus, hypertension, and morbid obesity." Tr. at 452.  At step three, the ALJ found Plaintiff "has not had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 455.

> The ALJ ascertained Plaintiff has the following RFC:
>
> [To] lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; to stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; to sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; with an unlimited ability to push and/or pull. [Plaintiff] retains the ability to occasionally climb ramps/stairs, balance, kneel, crouch, and crawl.  She should never climb ladders, ropes, or scaffolds.  Due to her asthma, [Plaintiff] should avoid concentrated exposure to fumes, odors, gases, and poor ventilation.  Because of [Plaintiff's] allegations of drowsiness from her medications, she should avoid concentrated exposure to hazards such as dangerous machinery and heights.

Tr. at 455.  At step four, the ALJ recognized "[s]ince January 7, 2005, [Plaintiff] has been unable to perform any past relevant work." Tr. at 458.  After considering Plaintiff's age, education, work experience, and RFC, the ALJ found at step five that "[p]rior to April 9, 2008, . . . there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. at 459.  However, the ALJ recognized that on April 9, 2008, Plaintiff's fifty-fifth birthday, her age category changed, and she was then "an individual closely approaching advanced age." Tr. at 458.  Therefore, when the ALJ applied the Medical-Vocational Guidelines, the ALJ concluded Plaintiff "was not disabled prior to April 9, 2008, but became disabled on that date and has continued to be disabled through the date of this decision." Tr. at 460.

## III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The underlying issue Plaintiff raises is whether the ALJ's Decision is supported by substantial evidence.  Pl.'s Mem. at 1.  Contrary to the ALJ's finding that Plaintiff was capable of light work with some additional limitations, Plaintiff asserts she was actually limited to sedentary work.  Id. at 6.  In making this assertion, Plaintiff relies on the opinion

of Dr. Murphy, who examined Plaintiff on December 8, 2005 and the opinion of Dr. Greenberg, who examined Plaintiff on November 29, 2004. Id. at 10. Plaintiff claims both Dr. Murphy and Dr. Greenberg limited Plaintiff to sedentary work, and pursuant to the Medical-Vocational Guidelines, Plaintiff should have been considered disabled as of the date of Dr. Murphy's examination or the date of Dr. Greenberg's examination.[4] Id. at 10, 11. Accordingly, Plaintiff's first allegation of error on the part of the ALJ is that the ALJ's RFC assessment of Plaintiff and the resulting disability onset date are inconsistent with the medical evidence in the record. Id. at 6. More specifically, Plaintiff alleges the ALJ's partial discrediting of Dr. Murphy's opinion, without sufficient explanation, was error. Id. at 6-10, 11. Also, because Plaintiff argues her disability began on the date of Dr. Greenberg's examination, the undersigned must determine whether the ALJ's failure to assign weight to Dr. Greenberg's opinion was improper. Id. at 6-10, 11. Plaintiff's second allegation of error is that the ALJ "fail[ed] to properly consider the effects of the Plaintiff's morbid obesity on her hip and low back pain." Id. at 10. Plaintiff indicates if the ALJ had not partially discredited Dr. Murphy's opinion or if the ALJ had given appropriate weight to Dr. Greenberg's opinion, and if the ALJ had properly considered the limiting effects of Plaintiff's obesity, the ALJ would have determined Plaintiff was limited to sedentary work. See id. at 8, 10. Had the ALJ determined Plaintiff was limited to sedentary work, Plaintiff concludes the ALJ, in applying the Medical-Vocational Guidelines, would have determined Plaintiff was

---

[4] Over the course of this case, Plaintiff has alleged various disability onset dates. For example, in her applications for SSI and DIB, Plaintiff asserted September 1, 2003 as her alleged onset date. Tr. at 112-14, 412-14. Then, at the first hearing, Plaintiff amended that date to January 7, 2005, Tr. at 18, 23, and at the second hearing, further amended the date to April 4, 2004, Tr. at 602-03. In her Memorandum and at oral argument in this Court, Plaintiff now asserts an onset date of either November 29, 2004 or December 8, 2005. Pl.'s Mem. at 11. In his Decision, the ALJ used the alleged onset date Plaintiff requested at the first hearing, January 7, 2005. Tr. at 450-60.

disabled as of Dr. Murphy's 2005 examination or Dr. Greenberg's 2004 examination. Id. at 10. Each allegation of error is addressed in turn.

### A.   Plaintiff's Alleged Onset Date and Opinions of Plaintiff's Examining and Nonexamining Physicians

Plaintiff first argues "the onset date chosen by ALJ Walker isn't consistent with the medical evidence of record that supports a finding that at all relev[a]nt times Plaintiff . . . was limited to sedentary work." Id. at 6. Specifically, Plaintiff contends: (1) the ALJ improperly discredited the portion of Dr. Murphy's 2005 opinion that limited Plaintiff to sedentary work, in reliance on the opinion of a nonexamining physician, Eric Puestow, M.D, id. at 8; see also Tr. at 332-42 (duplicate at Tr. at 343-53); and (2) the ALJ erred by not choosing the date of Dr. Greenberg's examination as the onset date, Pl.'s Mem. at 8, 10, 11. The undersigned will first address Dr. Murphy's opinion, followed by Dr. Greenberg's opinion.

An ALJ is required to consider every medical opinion.[5] See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating "[r]egardless of its source, we will evaluate every medical opinion we receive"). The same criteria is used in evaluating medical opinions from treating and nontreating sources,[6] as well as examining[7] and nonexamining[8] sources. The relevant

---

[5]   Medical opinions are statements from physicians that reflect judgments about the nature and severity of a claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[6]   "Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902.

[7]   An examining physician is a "physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

[8]   A nonexamining physician is a "physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. § 404.1502.

factors in evaluating medical opinions are: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5). "The opinions of nonexamining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight . . . and standing alone do not constitute substantial evidence." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988) (quoting Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987)). However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)).

Here, the ALJ accorded significant weight to Dr. Murphy's opinion, except the portion of her opinion in which she indicated Plaintiff could stand and/or walk for "at least 2 hours in an 8-hour workday." Tr. at 457; see also Tr. at 339 (duplicate at Tr. at 350). In discounting that specific part of Dr. Murphy's opinion, the ALJ relied on a state agency consultant, Dr. Puestow, who opined Plaintiff could stand and/or walk for "about 6 hours in an 8-hour workday." Tr. at 457; see also Tr. at 286. The ALJ provided more weight to Dr. Puestow's opinion regarding Plaintiff's ability to stand and/or walk because Dr. Puestow "[wa]s persuasive with his explanation of the facts upon which his conclusions were based." Tr. at 457.

Plaintiff contends the ALJ's accordance of weight to these opinions was improper because Dr. Murphy is a "rehabilitative medicine expert" while Dr. Puestow "is an endocrinologist[,]" and "Dr. Puestow's assessment is dated 12 months earlier than Dr. Murphy's examination." Pl.'s Mem. at 7. The Commissioner responds by arguing Dr. Murphy's opinion was directed at limiting Plaintiff from sustained walking. Memorandum

-8-

in Support of the Commissioner's Decision (Doc. No. 25; "Commissioner's Mem."), filed October 5, 2010, at 8.  In support, the Commissioner points out that "when asked what findings support this conclusion in the assessment, Dr. Murphy clearly wrote 'limited walking' secondary to deconditioning and asthma."  Id. at 8 (citing Tr. at 339-40).  The Commissioner also asserts the ALJ's reasoning for providing more weight to Dr. Puestow's opinion regarding Plaintiff's ability to stand and/or walk was sufficient because the ALJ considered Dr. Puestow "persuasive with his explanation of the facts upon which his conclusions were based."  Id. at 9 (citing Tr. at 285-92, 457).

The ALJ's explanation for discrediting one portion of Dr. Murphy's opinion in reliance on Dr. Puestow's opinion is insufficient.  The ALJ relied on a nonexamining physician's opinion that clearly contradicted an examining physician's opinion, which is generally insufficient unless the examining physician's opinion is contrary to the evidence.  See Lamb, 847 F.2d at 703; Oldham, 660 F.2d at 1084.  The ALJ did not indicate that Dr. Murphy's opinion on Plaintiff's ability to stand and/or walk was contrary to the evidence in the record.  Nor did the ALJ elaborate on the facts Dr. Puestow relied upon and why the ALJ determined Dr. Puestow's opinion was more persuasive.  The ALJ also did not address the one-year difference in time between the two physicians' opinions.  Overall, this lack of explanation and analysis frustrates the undersigned's review of whether substantial evidence supports the ALJ's Decision.  Therefore, the undersigned finds the ALJ erred in failing to explain why he discredited one portion of Dr. Murphy's opinion in reliance on Dr. Puestow's opinion, and this matter is due to be remanded.  On remand, the Commissioner shall fully explain his reasoning for providing more weight to Dr. Puestow's opinion than Dr. Murphy's opinion regarding Plaintiff's ability to stand and/or walk.  If after reevaluating those

opinions, the Commissioner deems it appropriate, the Commissioner shall reconsider Plaintiff's RFC assessment to be consistent with such findings.

Regarding Dr. Greenberg's examination performed on November 29, 2004, Plaintiff briefly lists Dr. Greenberg's observations of Plaintiff's hip mobility. Pl.'s Mem. at 8.[9] At the request of Plaintiff's counsel, Dr. Greenberg completed a form on September 14, 2009 regarding his examination of Plaintiff performed in 2004. Tr. at 509-14. Plaintiff argues the 2009 form shows when Dr. Greenberg examined her in 2004, she had "a marked inability to complete a normal workday and workweek without interruptions from pain[,]" and she could not "perform at a consistent pace without an unreasonable number and length of rest periods." Pl.'s Mem. at 8. Plaintiff asserts Dr. Greenberg's findings indicate Plaintiff was limited to sedentary work, and applying the Medical-Vocational Guidelines, a finding of disabled as of Dr. Greenberg's examination is appropriate. Id. at 10.

The Commissioner responds by noting that "Dr. Greenberg did not assess any specific work-related limitations." Commissioner's Mem. at 10. The Commissioner then details Dr. Greenberg's findings, particularly noting Dr. Greenberg indicated Plaintiff "had a waddling gait due to obesity, [but] she did not require an assistive device to walk." Id.; see also Tr. at 281. The Commissioner argues the ALJ properly provided "little weight" to the 2009 form completed by Dr. Greenberg because his "2004 exam findings d[o] not support [his] subsequent 2009 opinions of marked pain and a marked inability to complete a normal workday . . . ." Commissioner's Mem. at 11.

The ALJ addressed the weight he accorded to Dr. Greenberg's 2009 opinion, but the ALJ did not state the weight given, if any, to Dr. Greenberg's opinions from his examination of Plaintiff in 2004. It could be assumed the ALJ impliedly rejected the opinion

---

[9] Plaintiff's counsel reiterated these observations during oral argument in this Court.

-10-

of Dr. Greenberg, an examining physician, in reliance on the opinion of Dr. Puestow, a nonexamining physician, based on the date the ALJ chose as Plaintiff's disability onset date. However, without any specific explanation or discussion by the ALJ, the undersigned cannot determine whether such rejection was proper or whether the ALJ's Decision is supported by substantial evidence. Therefore, on remand, the Commissioner shall also address the weight given, if any, to Dr. Greenberg's 2004 opinion and the reasons for assigning such weight, and if appropriate, reevaluate Plaintiff's RFC assessment.

### B. The Effects of Plaintiff's Obesity

Plaintiff's second argument revolves around whether the ALJ properly considered "the effects of the Plaintiff's morbid obesity on her hip and low back pain." Pl.'s Mem. at 10. The Commissioner contends "Plaintiff has not set forth any actual, specific limitations, corroborated by the evidence, that she has due to obesity." Commissioner's Mem. at 11.

In 1999, the Social Security Administration deleted obesity from the listing of impairments. See SSR 02-1p, 2002 WL 34686281, at *1; see also 20 C.F.R. Part 404, Subpart P, Appendix 1. Nevertheless, obesity must still be taken into consideration when making the disability determination. See SSR 02-1p at *4-5. Social Security Ruling 02-1p provides guidance on how obesity should be analyzed. See id. at *1. It explains that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." Id. at *5.[10] A claimant's combination of impairments is medically equal to a listing "if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed

---

[10] "This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p at *5.

-11-

impairment." Id. Indeed, in some circumstances, obesity by itself may be equivalent to a listed impairment. Id. Because "[o]besity can cause limitation of function," the ALJ should "consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments . . . ." Id. at *6-7.

However, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments." Id. at *6. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Kelly v. Comm'r Soc. Sec., No. 6:08-cv-1751-Orl-19DAB, 2010 WL 582771, *15 (M.D. Fla. Feb. 18, 2010) (unpublished) (recognizing a finding of not disabled has been affirmed "where the record contains no evidence showing that the claimant's obesity affected her ability to perform work-related functions").

Moreover, in determining an individual's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments . . . ." SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citation omitted).

The ALJ determined Plaintiff's obesity is a severe impairment, but it is unclear whether or to what extent the ALJ accounted for Plaintiff's obesity in his RFC assessment.

-12-

Although almost every paragraph in the ALJ's Decision addresses in some way Plaintiff's obesity, Tr. at 450-60,[11] the ALJ failed to specifically articulate whether he actually considered Plaintiff's obesity when assessing Plaintiff's RFC, despite explicitly articulating the impairments he did take into account. See Tr. at 458 (specifying the ALJ took "into account [Plaintiff's] asthma, diabetes, reports of chronic pain, medication side effects, and the treatment which [h]as been prescribed"). Further, the ALJ did not indicate the extent of any effects Plaintiff's obesity had on her ability to perform work-related functions prior to April 9, 2008. Therefore, on remand, the Commissioner should consider the limiting effects, if any, of Plaintiff's obesity. If the Commissioner determines the effects of Plaintiff's obesity limited her ability to work prior to April 9, 2008, the Commissioner shall reevaluate Plaintiff's RFC.

Finally, during oral argument, Plaintiff asked the Court to reverse this cause without remand, although her Memorandum asks for remand. Pl.'s Mem. at 11. Plaintiff argued the Court could determine, based on the record, Plaintiff was disabled prior to April 9, 2008. As discussed supra, the undersigned cannot determine whether substantial evidence supports the ALJ's Decision. Consequently, this cause will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion and order.

---

[11] The ALJ makes passing references to Plaintiff's failure to lose weight. See Tr. at 454 ("[O]besity has continued to be a problem for her."); 456 ("[D]espite continuous education and intensive support from ACORN[, Plaintiff] has not been compliant with these measures and has continued to gain weight."); 457 (Plaintiff "has not made a real effort to lose weight."). The undersigned recognizes the denial of disability benefits based on a claimant's failure to follow prescribed treatment is proper in obesity cases only when a given treatment is prescribed by a treating source, not when a treatment is merely recommended. See SSR 02-1p at *9-10; see also 20 C.F.R. §§ 404.1530, 416.930 (stating "[i]f you do not follow the prescribed treatment without a good reason, we will find you not disabled . . ."). The ALJ's Decision, however, does not clearly address whether he determined Plaintiff's failure to lose weight was a basis for denying her benefits. If, on remand, the ALJ does consider her failure to lose weight a sufficient basis for denying her benefits prior to April 9, 2008, the ALJ shall detail his reasons, supported by the evidence in the record.

## V.  Conclusion

Additional explanation is needed to determine whether the ALJ's reasons for according more weight to Dr. Puestow's opinion than Dr. Murphy's opinion regarding Plaintiff's ability to stand and/or walk are supported by substantial evidence.  The ALJ shall also specify the weight accorded, if any, to Dr. Greenberg's 2004 opinion and state the reasons for assigning such weight.  After reconsidering and evaluating those opinions, if appropriate, the Commissioner shall reassess Plaintiff's RFC.  Furthermore, the ALJ shall consider the effects, if any, of Plaintiff's obesity on her work-related functions.  If Plaintiff's obesity affects her ability to perform work-related functions, the ALJ shall consider such effects in his RFC assessment.  In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

   (a) Reevaluate the opinions of Drs. Murphy, Puestow, and Greenberg, explain the weight accorded to each opinion, and state the reasons for according such weight;

   (b) Reevaluate the limiting effects, if any, of Plaintiff's obesity;

   (c) If appropriate, reevaluate Plaintiff's residual functional capacity; and

   (d) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk of Court is directed to close the file.

-14-

3. If past-due benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past-due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida, on September 28, 2011.

*/s/ James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jld
Copies to:
Counsel of Record